<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| NEUROMON PROFESSIONALS, LLC, | : | Civil Action No. 25-13216 (SRC) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| HORIZON BLUE CROSS BLUE SHIELD, | : | |
| Defendant. | : | |

**<u>CHESLER, District Judge</u>**

This matter comes before the Court by way of Plaintiff Neuromon Professionals, LLC's ("Plaintiff") Petition to Vacate the Arbitration Award (the "Petition"), (Dkt. No. 1). Defendant Horizon Blue Cross Blue Shield ("Defendant") opposed the motion, (Dkt. No. 8). Plaintiff filed a reply in further support of the Petition, (Dkt. No. 10). The Court reviewed the papers submitted and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiff's requested relief is **DENIED** and Plaintiff's Petition is **DISMISSED** with prejudice.

**I.   PROCEDURAL HISTORY**

On July 11, 2025, Plaintiff filed a Petition to Vacate the Arbitration Award. (Dkt. No. 1). Defendant filed opposition on September 26, 2025. (Dkt. No. 8). Plaintiff filed a reply in further support of its Petition on October 6, 2025. (Dkt. No. 10).

Through its Motion, Plaintiff seeks to vacate the arbitration award issued under the No

1

Surprises Act (the "NSA").

## II.     FACTUAL BACKGROUND

This case arises from Plaintiff's Petition seeking to vacate an Independent Dispute Resolution ("IDR") determination issued under the NSA. Pet. ¶ 1. On October 4, 2024, Plaintiff, a medical practice, provided medical treatment to a patient on commercial insurance for which Plaintiff is out-of-network. Id. ¶¶ 6-7; 30. Following the treatment, Plaintiff submitted a medical bill to Defendant, the patient's insurance provider, seeking payment for the same. Id. ¶ 7.

Plaintiff submitted a medical bill to Defendant seeking payment for the procedure, itemized under Current Procedural Terminology ("CPT") codes. Id. ¶ 30. Specifically, Plaintiff billed Defendant for CPT codes 95941, 95938, 95939, and 95861. Id. Regarding CPT 95941, Plaintiff billed Defendant in the amount of $13,500.00. In response, Defendant issued payment in the amount of $590.49. ¶¶ 30-31. Regarding CPT 95938, Plaintiff billed Defendant in the amount of $9,175.00. In response, Defendant issued payment in the amount of $55.06. Id. Regarding CPT 95939, Plaintiff billed Defendant in the amount of $15,000.00. In response, Defendant issued payment in the amount of $143.97. Id. Regarding CPT 95861, Plaintiff billed Defendant in the amount of $5,300.00. In response, Defendant issued payment in the amount of $98.77. Id. Defendant paid Plaintiff partial payments based on its asserted Qualifying Payment Amounts ("QPA"). Id.

Because Plaintiff is an out-of-network provider, Defendant's partial payments were subject to the NSA, 42 U.S.C. § 300gg-111 *et seq.* ¶¶ 8-9. Pursuant to the NSA, if the payment dispute between the provide and insurer is not resolved during the 30-day negotiation period, the provider has the right to initiate arbitration under which the proper reimbursement amount is determined by

a neutral arbitrator. 42 U.S.C. § 300gg-111(c)(1-5); ¶ 33. Plaintiff initiated such arbitration, and Maximus was the Certified IDR Entity assigned to the arbitration. Id. ¶ 11. During arbitration, Plaintiff submitted the following offers: $13,500.00 for CPT 95940, $9,175.00 for CPT 95938, $15,000.00 for CPT 95939, and $5,189.00 for CPT 95861. Id. ¶ 36. Defendant submitted the following offers: $590.49 for CPT 95940, $55.06 for CPT 95938, $143.97 for CPT 95939, and $98.77 for CPT 95861. Id. at 38. The substantive portion of Maximus' written payment determination states:

> Maximus Federal Services, Inc. has reviewed your Federal Independent Dispute Resolution (IDR) dispute with reference number DISP-2493104 and has determined that HORIZON BCBS is the prevailing party in this dispute. HORIZON BCBS prevailed in 4 out of 4 dispute line items.
> ….
> After considering all permissible information submitted by both parties, Maximus Federal Services, Inc. has determined that the out-of-network payment amount of $590.49 offered by HORIZON BCBS is the appropriate out-of-network rate for the item or service 95941 on this claim NA-780262433992065 00 under this dispute.
> ….
> After considering all permissible information submitted by both parties, Maximus Federal Services, Inc. has determined that the out-of-network payment amount of $55.06 offered by HORIZON BCBS is the appropriate out-of-network rate for the item or service 95938 on this claim NA-780262433992065 00 under this dispute.
> ….
> After considering all permissible information submitted by both parties, Maximus Federal Services, Inc. has determined that the out-of-network payment amount of $143.97 offered by HORIZON BCBS is the appropriate out-of-network rate for the item or service 95939 on this claim NA-780262433992065 00 under this dispute.
> ….
> After considering all permissible information submitted by both parties, Maximus Federal Services, Inc. has determined that the out-of-network payment amount of $98.77 offered by HORIZON BCBS is the appropriate out-of-network rate for the item or service 95861 on this claim NA-780262433992065 00 under this dispute.

(Id.; Ex. A.)

In short, Maximus determined that the offers submitted by Defendant were the appropriate out-of-network rate for the treatment provided by Plaintiff. Id. ¶ 39.

Plaintiff filed its Petition on July 11, 2025, seeking an Order vacating the IDR determinations pursuant to the NSA and the Federal Arbitration Act ("FAA"). 42 U.S.C. § 300gg-111(a)(3)(E)(i); 9 U.S.C. § 10. (Dkt. No. 1). Defendant filed opposition on September 26, 2025. (Dkt. No. 8). Plaintiff filed a reply in further support of its Petition on October 6, 2025. (Dkt. No. 10).

### III. LEGAL STANDARD

#### A. Arbitration of Decisions Under the NSA

Congress enacted the NSA on December 27, 2020, to address "surprise medical bills." Texas Med. Ass'n v. United States Dep't of Health & Hum. Servs., 587 F. Supp. 3d 528, 533 (E.D. Tex. 2022). "Generally, the [NSA] limits the amount an insured patient will pay for emergency services furnished by an out-of-network provider and for certain non-emergency services furnished by an out-of-network provider at an in-network facility." Id. (citing 42 U.S.C. §§ 300gg-111, 300gg-131, 300gg-132).

The NSA protects patients by relieving them of liability to pay for the procedure beyond their ordinary in-network insurance payments and instead has the provider and the insurer negotiate or dispute the proper payment among themselves. 42 U.S.C. § 300gg-111(c)(1)(A). When an insurer makes an initial payment or denial of payment, the insurer and the healthcare provider must negotiate the proper payment for the next thirty-days. Id. Where, as here, the out-of-network provider is dissatisfied with the amount paid by the insurer and the parties are unable

to resolve the dispute through negotiations, the parties may then proceed to the IDR process. Id. § 300gg-111(c)(1)(B). If the parties are unable to agree on the amount due, the statute provides a four-day period for either party to submit the dispute to the Secretary of Health and Human Services ("HHS"), initiating an IDR. Id.

The IDR entity must be certified through a process established by the HHS, the Department of Labor, and the Treasury, and must have "sufficient medical, legal, and other expertise" to make a determination under the NSA. Id. § 300gg-111(c)(4)(A). The arbitration process is "baseball-style," meaning that the provider and insurer each submit a final offer, and the IDR entity must select one of the two proposed amounts. See Texas Med. Ass'n, 587 F. Supp. at 534; 42 U.S.C. §§ 300gg-111(c)(5)(A)-(B). When choosing between the two offers, the IDR entity must consider a number of factors:

> (i) In general
>
> In determining which offer is the payment to be applied pursuant to this paragraph, the certified IDR entity, with respect to the determination for a qualified IDR item or service shall consider—
>
> (I) the qualifying payment amounts (as defined in subsection (a)(3)(E)) for the applicable year for items or services that are comparable to the qualified IDR item or service and that are furnished in the same geographic region (as defined by the Secretary for purposes of such subsection) as such qualified IDR item or service; and
>
> (II) subject to subparagraph (D), information on any circumstance described in clause (ii), such information as requested in subparagraph (B)(i)(II), and any additional information provided in subparagraph (B)(ii).
>
> (ii) Additional circumstances
>
> For purposes of clause (i)(II), the circumstances described in this clause are, with respect to a qualified IDR item or service of a

5

nonparticipating provider, nonparticipating emergency facility, group health plan, or health insurance issuer of group or individual health insurance coverage the following:

(I) The level of training, experience, and quality and outcomes measurements of the provider or facility that furnished such item or service (such as those endorsed by the consensus-based entity authorized in section 1395aaa of this title).

(II) The market share held by the nonparticipating provider or facility or that of the plan or issuer in the geographic region in which the item or service was provided.

(III) The acuity of the individual receiving such item or service or the complexity of furnishing such item or service to such individual.

(IV) The teaching status, case mix, and scope of services of the nonparticipating facility that furnished such item or service.

(V) Demonstrations of good faith efforts (or lack of good faith efforts) made by the nonparticipating provider or nonparticipating facility or the plan or issuer to enter into network agreements and, if applicable, contracted rates between the provider or facility, as applicable, and the plan or issuer, as applicable, during the previous 4 plan years.

42 U.S.C. §§ 300gg-111(c)(5)(C). The IDR entity is also prohibited from considering usual and customary charges, the amount the provider would have billed for the item or service had the NSA not applied, or the reimbursement rates for the item or service by a public payor. 42 U.S.C. § 300gg-111(c)(5)(D).

## B. Vacatur of IDR Determinations Under the NSA and FAA

Pursuant to 42 U.S.C. § 300gg-111(c)(5)(E), an IDR entity's determination is binding on the parties and is subject to judicial review only in the limited circumstances set forth in Section 10(a) of the FAA. 9 U.S.C. § 10. Section 10(a) of the FAA, incorporated by reference, provides four grounds upon which a district court may vacate the IDR entity's determination:

6

>    (1) where the award was procured by corruption, fraud, or undue means;
>
>    (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
>    (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
>    (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); see also CPR Mgmt., S.A. v. Devon Park Bioventures, L.P., 19 F.4th 236, 245 (3d Cir. 2021) (listing these narrow circumstances as the exclusive grounds to vacate an arbitration award).

Courts may only consider these circumstances, and they are not permitted to consider whether an arbitrator committed an error of law. Sun Ship, Inc. v. Matson Navigation Co., 785 F.2d 59, 62 (3d Cir. 1986). This standard of review is "extremely deferential," France v. Bernstein, 43 F.4th 367, 377 (3d Cir. 2022) (quoting Indep. Lab'y Emps.' Union, Inc. v. ExxonMobile Rsch. & Eng'g Co., 11 F.4th 210, 215 (3d Cir. 2021)), and the party moving to vacate an arbitration award pursuant to § 10(a) bears the burden of proof, PG Pub'g, Inc. v. Newspaper Guild of Pittsburgh, 19 F.4th 308, 314 (3d Cir. 2021).

"The ability of a court to vacate an arbitration award is extremely limited." Jones v. PPG Indus., Inc., 393 F. App'x. 869, 870 (3d Cir. 2010). This is because "[t]here is a strong presumption under the [FAA] in favor of enforcing arbitration awards." Brentwood Med. Assocs. v. United Mine Workers of Am., 396 F.3d 237, 241 (3d Cir. 2005) (citation omitted). "[R]eview

7

under § 10 focuses on misconduct rather than mistake." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 350-51 (2011).  In order to vacate an arbitration award, the opposing party "must clear a high hurdle." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010).  "It is not enough for petitioners to show that the panel committed an error—or even a serious error." Id. (citations omitted).  An arbitration decision may be vacated where an arbitrator "decides an issue not submitted to him, grants relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether." Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 219-20 (3d Cir. 2012) (citations omitted).  "There must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award." Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct., 618 F.3d 277, 295-96 (quoting United Transp. Union Loc. 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir. 1995)).

### IV. MOTION TO VACATE THE IDR DETERMINATION

Plaintiff argues that Maximus committed prejudicial misbehavior and exceeded its powers by using an illegal presumption in favor of the QPA and determining that the additional information submitted by Plaintiff did not overcome this implicit presumption.  Pl.'s Pet. at ¶ 53.  Plaintiff also argues that Maximus committed prejudicial misbehavior and exceeded its powers by using an illegal presumption in favor of the QPA by determining that the QPA "completely capture[d]" other factors for consideration, finding that Plaintiff also failed to overcome this presumption.  Id. at ¶ 54.  Plaintiff argues that the FAA authorizes this Court not only to vacate an arbitration award but also to order a rehearing unless the parties' agreement prohibits it, thus, because there is no agreement here between the parties, there is nothing that bars a rehearing.  Id.

8

at ¶ 55. Plaintiff further contends that nothing in the NSA limits a court's ability to order such relief. Id. According to Plaintiff, simply vacating the IDR award would provide no meaningful remedy because only a rehearing conducted under the proper NSA standards could yield a higher payment. Id. Plaintiff alleges that it provided the subject medical treatment and is thus entitled to a fair adjudication of the amount of their payments. Id. at ¶ 58.

Defendant argues that Plaintiff is not entitled to vacatur of Maximus' determination because Maximus did not commit prejudicial misbehavior that would warrant vacatur under the FAA. Def.'s Br. at 10. Defendant contends that Plaintiff's request should be denied because it failed to offer proof that Maximus committed a misapplication of the law and, further, because even if Maximus misapplied the law, an alleged misapplication of the law is insufficient to support vacatur. Id. at 11-12.

### A. The Court May Not Reweigh the Statutory Factors or Second-Guess the IDR Entity's Reasoning

At the outset, the Court emphasizes that its role is not to determine whether Maximus reached the correct payment amount or whether the Court would have selected a different offer. The NSA entrusts those determinations to certified IDR entities, not federal courts. § 300gg-111(c)(1)(A). Judicial review in vacatur actions is limited to ensuring that the IDR entity acted within its delegated authority and did not engage in the type of egregious misconduct contemplated by § 10(a) of the FAA. 9 U.S.C. § 10(a); see Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 219-20 (3d Cir. 2012) (finding that an arbitration decision may be vacated where an arbitrator "decides an issue not submitted to him, grants relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether.")

Plaintiff's Petition repeatedly faults Maximus for allegedly giving insufficient weight to Plaintiff's evidence regarding provider experience, market considerations, and the complexity of services rendered. See generally Pl.'s Pet. But the NSA does not require an IDR entity to assign equal weight to each statutory factor, nor does it require a factor-by-factor explanation. So long as the IDR entity considers the required categories of information and selects one of the two submitted offers, it acts within its statutory authority. See GPS of New Jersey MD, P.C. v. Aetna, Inc., No. 2:22-CV-05487 (ES) (JSA), 2024 WL 414042, at *12 (D.N.J. Feb. 5, 2024) (finding that "[a]rbitrators are not required to provide an explanation for [their] decision…. It follows that an arbitrator is not obliged to specifically address the impact of each factor it considers.")

Here, the written determinations expressly state that Maximus considered "all permissible information submitted by both parties." Pl.'s Pet. Ex. A. The fact that Maximus was ultimately unpersuaded by Plaintiff's submissions does not establish that those submissions were ignored, much less that Maximus engaged in misconduct. Disagreement with the weight afforded to particular evidence is not one of the limited cognizable bases for vacatur. 9 U.S.C. § 10(a); see also CPR Mgmt., S.A., 19 F.4th at 245.

**B. Maximus' Reliance on the QPA Was Not Impermissible**

Plaintiff's primary contention is that Maximus applied an impermissible presumption in favor of the QPA, rendering the determinations unlawful. However, the record does not support this assertion. The NSA expressly requires the IDR entity to consider the QPA, 42 U.S.C. § 300gg-111(c)(5)(C)(i)(I), and nothing in the statute or cases cited by Plaintiff prohibits the IDR entity from concluding that the QPA is the most persuasive indicator of the appropriate out-of-network rate in a given dispute, or supports Plaintiff's proposition that Maximus' consideration of

10

the QPA was unlawful.

Further, even if Plaintiff's arguments regarding Maximus' consideration of the QPA were true, alleged legal error is insufficient to justify vacatur. The FAA does not permit courts to overturn arbitration awards simply because the arbitrator may have misunderstood or misapplied the law. "A failure to consider required factors amounts to a mistake of law, which the Court is not at liberty to review." GPS of New Jersey, No. 2:22-CV-05487 (ES) (JSA), 2024 WL 414042, at *5 (D.N.J. Feb. 5, 2024). Plaintiff fails to meet the high threshold necessary to warrant vacatur of IDR awards under the statute as Plaintiff fails to establish that Maximus' actions amounted to misconduct resulting in prejudicial misbehavior. See Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 586 (2008) (describing the bases for vacatur in 9 U.S.C. §§ 10 and 11 as "egregious departures from the parties' agreed-upon arbitration" and "extreme arbitral conduct").

Plaintiff also invokes § 10(a)(3), which permits vacatur where the arbitrator engages in misconduct that prejudices a party's rights, such as refusing to hear pertinent evidence. This provision is concerned with fundamental unfairness in the arbitral process, not dissatisfaction with the outcome. Plaintiff does not allege that Maximus refused to accept its submissions, denied it an opportunity to be heard, or otherwise departed from the procedures prescribed by the NSA. Instead, Plaintiff challenges the conclusions Maximus drew from the evidence presented. Such arguments do not rise to the level of prejudicial misbehavior as contemplated by the FAA.

**C. A Rehearing Is Not An Available Remedy**

Finally, Plaintiff argues that the Court should vacate the determinations and remand for a rehearing before a different IDR entity. This request finds no support in the NSA. 42 U.S.C. § 300gg-111. Further, the FAA only permits the Court to order a rehearing if "an award is vacated

11

and the time within which the agreement required the award to be made has not expired." 9 U.S.C. § 10(b).  Because Plaintiff has failed to establish any statutory basis for vacatur, the Court need not – and may not – order a rehearing. .

### V. CONCLUSION

Because Plaintiff has failed to sufficiently demonstrate that it is entitled to vacatur of the arbitration award, Plaintiff's requested relief is **DENIED** and Plaintiff's Petition is **DISMISSED** with prejudice.   An appropriate Order accompanies this Opinion

        /s/ Stanley R. Chesler  
STANLEY R. CHESLER, U.S.D.J.

Dated: December 17, 2025